AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| In the Matter of the Search of | Case No. |
|---|---|
| The image of JAMES THEODORE POLZIN's iPhone 12 Max Pro, Serial Number G0NDPJZ50D46, located on a Kingston Ironkey D300 128GB thumb drive. | 21-132MB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of ___Arizona___.
*(identify the person or describe the property to be searched and give its location)*:

### As further described in Attachment A.

The person or property to be searched, described above, is believed to conceal (*identify the person or describe the property to be seized*):

### As set forth in Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _May 26, 2021_ *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.
☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the duty United States Magistrate Judge in the Phoenix Division.

Date and time issued: _5/12/2021 @ 2 pm_     _____
                                                  *Judge's signature*

City and state: _Phoenix, Arizona_____     __Honorable Michelle H. Burns, U.S. Magistrate Judge__
                                                  *Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

## RETURN

| Case No.: | Date and Time Warrant Executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory Made in the Presence of:

Inventory of the property taken and name of any person(s) seized:

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
Executing officer's signature

_____
Printed name and title

**ATTACHMENT A**
**LOCATION TO BE SEARCHED**

The image of JAMES THEODORE POLZIN's iPhone 12 Max Pro, Serial Number G0NDPJZ50D46, located on a Kingston Ironkey D300 128GB thumb drive.

Kingston Ironkey D300 128GB thumb drive was provided by IRS: CI Computer Investigative Specialist Richard Robinson and contains the image of POLZIN's iPhone 12 Max Pro. The thumb drive has the following printing on top of the thumb drive body:

- Ironkey
- D300
- 128GB

The back of the thumb drive has the following printing on top of the thumb drive body:

- Kingston
- IKD300/128GB
- 04725-280.D01LF
- Assembled in USA
- FV 8179071 5V

Top of Ironkey thumb drive:



Back of Ironkey thumb drive:



## ATTACHMENT B
## ITEMS TO BE SEIZED

1.  The items to be seized at the locations more particularly described in Attachment A constitute evidence, contraband, fruits and instrumentalities of violations of:

    a.  Title 18 U.S.C. § 1343:  Wire fraud.

    b.  Title 18 U.S.C. § 1957:  Money laundering.

    c.  Title 18 U.S.C. § 1040:  Fraud in Connection with a Major Disaster.

2.  For the period on or about January 1, 2019 to the present, all records more particularly described below of JAMES THEODORE POLZIN and any associates of POLZIN or any entity related to POLZIN including the following:

    a.  JAMES THEODORE POLZIN

    b.  SVITLANA POPSII

    c.  LEONARD PENNOCK

    d.  TRANSPAREN CPAS

    e.  CPA OUTSOURCING LLCS

    f.  FOUR CORNERS TAX AND ACCOUNTING

    g.  POLZIN HOLDINGS

    h.  ERIKA M. MUNOZ LLC

    i.  EMG HOMES REAL ESTATE LLC

    j.  WOLFF DEVELOPMENT

    k.  XTREME PLUMBING

    l.  DYNAMIC HOMEZ

    m.  AURORA HOMES

    n.  LAM BUILDING

3.  Records, evidence, and correspondence related to the application for and/or receival of loans funded relative to the US Government, to include Small Business Administration (SBA) loans, Economic Injury Disaster Loans (EIDL) and Paycheck Protection Program (PPP) Loans.

4.   Records and correspondence relative to POLZIN's clients and customers.

5.   Records and correspondence relative to payments to employees, contractors and vendors by POLZIN.

6.   Evidence of income obtained from the fraudulent scheme, including correspondence and documents reflecting income/revenue, more particularly described as invoices, bills, checks, general ledger(s), accounts receivable, bank statements, credit card statements, receipts, wire transfers, cashier's checks, money orders, petty cash records, contracts, purchase orders, checkbooks, Forms 1099, Forms W-2, ecommerce, merchant processing and other records reflecting income/revenue.

7.   Documents reflecting expenses; more particularly described as invoices, bills, checks, general ledger(s), accounts payable, bank statements, credit card statements, receipts, wire transfers, cashier's checks, money orders, petty cash records, contracts, purchase orders, checkbooks, Forms 1099 issued, and other records reflecting expenses.

8.   All records and correspondence pertaining to ownership of the above mentioned entities.   These records include indicia of communal ownership, partnership, individual business entities, Schedule C businesses and corporations.   Records dealing with the share/split of revenues and expenses between any and all individuals.

9.   Correspondence and documents reflecting the taxpayers travel expenditures to include copies of travel tickets, hotel bills, travel confirmations, and copies of payment items comprising evidence of expenditures and liabilities.

10.   Calendars and correspondence showing the work and/or travel schedule of the taxpayers and the above mentioned entities.

11.   Correspondence and documents reflecting expenses paid by the taxpayers with cash.

12.   Correspondence and documents relating to loans involving the individuals, including loan applications and statements, correspondence, promissory notes, personal financial statements, corporate minutes, UCC Filings and any other loan

documentation.

13. Correspondence between the individuals regarding expenses paid by the above mentioned entities. Correspondence with any tax return preparer relating to business and/or personal returns, and correspondence with any payroll service provider.

14. Copies of tax returns (including drafts) for the taxpayers and related tax preparation files to include work papers, lists and/or spreadsheets of personal expenses paid by the taxpayers, schedules, receipts, and any other source documents comprising evidence of asset acquisition, jewelry, transfers of property, expenditures, accounting software records, and sources of income.

15. Originals or copies of federal and state income tax returns, including tax forms, schedules, attachments, electronically filed tax returns and confirmations, tax worksheets, supporting documentation used in the preparation of tax returns, related correspondence, and other documents used in the creation and/or preparation of tax returns.

16. Lists of individuals, employers, Forms W-2, Forms 1099 or 1096, Employer Identification Numbers, and dependents used for the preparation of tax returns and any related correspondence.

17. All bank records, checks, credit card bills, account information (foreign and domestic), and other financial records of the taxpayers; to include all purchases/expenses of personal items, services, assets, loans, and any other item reflecting the personal finances of the taxpayers and any correspondence related to such.

18. Records related to real property; including Deeds of Trust, Affidavits of Value, Warranty Deeds, foreclosure documents, escrow records, correspondence, bank wire transfers, copies of checks, recorded documentation, appraisal records, property management records, documents related to loan origination, HOA correspondence, billing, utility information, plans for

3

development/refurbishing/improvements, county assessor records.

19. Records pertaining to the indicia of ownership of assets held in the name of nominees, including those listed above.

20. Driver's license, Social Security card, credit cards, or other personal identifying information.

21. Any contract, agreement, or correspondence, involving POLZIN.

22. Documents reflecting the transfer of ownership or money or precious metals to other individuals.

23. Assets to include cash, jewelry, precious metals, vehicles, and stock certificates as fruits of the alleged criminal activity.

24. Records reflecting the acquisition or disposition of any residence, vehicle, trailer, boat, mobile home, weapon, or valuable asset.

25. Data regarding outgoing calls, incoming calls, missed calls, phone book memory data, contact names and numbers, call details including call history, electronic mail (email) messages, text messages, text message history, photos and videos stored on any telephone, cellular telephone or smart phone.

26. For any computer, computer hard drive, cell phone or other physical object upon which computer data can be recorded (hereinafter, "COMPUTER") that is called for by this warrant, or that might contain things otherwise called for by this warrant:

    a. Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, and browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b. Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of

4

security software designed to detect malicious software;

c.    Evidence of the lack of such malicious software;

d.    Evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

e.    Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

f.    Evidence of the times the COMPUTER was used;

g.    Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

h.    Documentation and manuals that may be necessary to access the COMPUTER or conduct an examination of the COMPUTER;

i.    Contextual information necessary to understand the evidence described in this attachment;

j.    Computer software which may have been used to create, access, modify or to otherwise interact with the stored files. Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. It commonly includes the operating systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs;

k.    Any peripheral equipment used to facilitate the transmission, creation, display, encoding or storage of records, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners.

l.    Records and things evidencing the use of the Internet including:

a. Routers, modem, and network equipment used to connect computers to the Internet;

b. Records of Internet Protocol addresses used;

  c. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

**Definition: "Records," "Documents," and "Information"**

27. As used above, the terms "records," "documents," and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies).

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of | Case No.   21-132 MB |
| The image of JAMES THEODORE POLZIN's iPhone 12 Max Pro, Serial Number G0NDPJZ50D46, located on a Kingston Ironkey D300 128GB thumb drive. | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property (*identify the person or describe the property to be seized*):

### As further described in Attachment A.

Located in the District of <u>Arizona</u>, there is now concealed (*identify the person or describe the property to be seized*):

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is:

- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1957 | Money Laundering |
| 26 U.S.C. § 1040 | Fraud in Connection with a Major Disaster |

The application is based on these facts:

### See attached Affidavit of Special Agent Gregory Luethans.

☒ Continued on the attached sheet.

Reviewed by AUSA Kevin M. Rapp

KEVIN RAPP Digitally signed by KEVIN RAPP
Date: 2021.05.12 12:37:54 -07'00'

__X__   **Sworn Telephonically**

Date: May 12, 2021

City and state: Phoenix, Arizona

GREGORY N LUETHANS   Digitally signed by GREGORY N LUETHANS
Date: 2021.05.12 12:48:31 -07'00'

*Applicant's Signature*

Gregory Luethans, Special Agent, HSI
*Printed name and title*

*Judge's signature*

Honorable Michelle H. Burns, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**
**LOCATION TO BE SEARCHED**

The image of JAMES THEODORE POLZIN's iPhone 12 Max Pro, Serial Number G0NDPJZ50D46, located on a Kingston Ironkey D300 128GB thumb drive.

Kingston Ironkey D300 128GB thumb drive was provided by IRS: CI Computer Investigative Specialist Richard Robinson and contains the image of POLZIN's iPhone 12 Max Pro. The thumb drive has the following printing on top of the thumb drive body:

- Ironkey
- D300
- 128GB

The back of the thumb drive has the following printing on top of the thumb drive body:

- Kingston
- IKD300/128GB
- 04725-280.D01LF
- Assembled in USA
- FV 8179071 5V

Top of Ironkey thumb drive:



Back of Ironkey thumb drive:



## ATTACHMENT B
## ITEMS TO BE SEIZED

1. The items to be seized at the locations more particularly described in Attachment A constitute evidence, contraband, fruits and instrumentalities of violations of:

  a. Title 18 U.S.C. § 1343:  Wire fraud.

  b. Title 18 U.S.C. § 1957:  Money laundering.

  c. Title 18 U.S.C. § 1040:  Fraud in Connection with a Major Disaster.

2. For the period on or about January 1, 2019 to the present, all records more particularly described below of JAMES THEODORE POLZIN and any associates of POLZIN or any entity related to POLZIN including the following:

  a. JAMES THEODORE POLZIN

  b. SVITLANA POPSII

  c. LEONARD PENNOCK

  d. TRANSPAREN CPAS

  e. CPA OUTSOURCING LLCS

  f. FOUR CORNERS TAX AND ACCOUNTING

  g. POLZIN HOLDINGS

  h. ERIKA M. MUNOZ LLC

  i. EMG HOMES REAL ESTATE LLC

  j. WOLFF DEVELOPMENT

  k. XTREME PLUMBING

  l. DYNAMIC HOMEZ

  m. AURORA HOMES

  n. LAM BUILDING

3. Records, evidence, and correspondence related to the application for and/or receival of loans funded relative to the US Government, to include Small Business Administration (SBA) loans, Economic Injury Disaster Loans (EIDL) and Paycheck Protection Program (PPP) Loans.

4.  Records and correspondence relative to POLZIN's clients and customers.

5.  Records and correspondence relative to payments to employees, contractors and vendors by POLZIN.

6.  Evidence of income obtained from the fraudulent scheme, including correspondence and documents reflecting income/revenue, more particularly described as invoices, bills, checks, general ledger(s), accounts receivable, bank statements, credit card statements, receipts, wire transfers, cashier's checks, money orders, petty cash records, contracts, purchase orders, checkbooks, Forms 1099, Forms W-2, ecommerce, merchant processing and other records reflecting income/revenue.

7.  Documents reflecting expenses; more particularly described as invoices, bills, checks, general ledger(s), accounts payable, bank statements, credit card statements, receipts, wire transfers, cashier's checks, money orders, petty cash records, contracts, purchase orders, checkbooks, Forms 1099 issued, and other records reflecting expenses.

8.  All records and correspondence pertaining to ownership of the above mentioned entities.  These records include indicia of communal ownership, partnership, individual business entities, Schedule C businesses and corporations.  Records dealing with the share/split of revenues and expenses between any and all individuals.

9.  Correspondence and documents reflecting the taxpayers travel expenditures to include copies of travel tickets, hotel bills, travel confirmations, and copies of payment items comprising evidence of expenditures and liabilities.

10. Calendars and correspondence showing the work and/or travel schedule of the taxpayers and the above mentioned entities.

11. Correspondence and documents reflecting expenses paid by the taxpayers with cash.

12. Correspondence and documents relating to loans involving the individuals, including loan applications and statements, correspondence, promissory notes, personal financial statements, corporate minutes, UCC Filings and any other loan

2

documentation.

13. Correspondence between the individuals regarding expenses paid by the above mentioned entities.  Correspondence with any tax return preparer relating to business and/or personal returns, and correspondence with any payroll service provider.

14. Copies of tax returns (including drafts) for the taxpayers and related tax preparation files to include work papers, lists and/or spreadsheets of personal expenses paid by the taxpayers, schedules, receipts, and any other source documents comprising evidence of asset acquisition, jewelry, transfers of property, expenditures, accounting software records, and sources of income.

15. Originals or copies of federal and state income tax returns, including tax forms, schedules, attachments, electronically filed tax returns and confirmations, tax worksheets, supporting documentation used in the preparation of tax returns, related correspondence, and other documents used in the creation and/or preparation of tax returns.

16. Lists of individuals, employers, Forms W-2, Forms 1099 or 1096, Employer Identification Numbers, and dependents used for the preparation of tax returns and any related correspondence.

17. All bank records, checks, credit card bills, account information (foreign and domestic), and other financial records of the taxpayers; to include all purchases/expenses of personal items, services, assets, loans, and any other item reflecting the personal finances of the taxpayers and any correspondence related to such.

18. Records related to real property; including Deeds of Trust, Affidavits of Value, Warranty Deeds, foreclosure documents, escrow records, correspondence, bank wire transfers, copies of checks, recorded documentation, appraisal records, property management records, documents related to loan origination, HOA correspondence,          billing,          utility          information,          plans          for

development/refurbishing/improvements, county assessor records.

19. Records pertaining to the indicia of ownership of assets held in the name of nominees, including those listed above.

20. Driver's license, Social Security card, credit cards, or other personal identifying information.

21. Any contract, agreement, or correspondence, involving POLZIN.

22. Documents reflecting the transfer of ownership or money or precious metals to other individuals.

23. Assets to include cash, jewelry, precious metals, vehicles, and stock certificates as fruits of the alleged criminal activity.

24. Records reflecting the acquisition or disposition of any residence, vehicle, trailer, boat, mobile home, weapon, or valuable asset.

25. Data regarding outgoing calls, incoming calls, missed calls, phone book memory data, contact names and numbers, call details including call history, electronic mail (email) messages, text messages, text message history, photos and videos stored on any telephone, cellular telephone or smart phone.

26. For any computer, computer hard drive, cell phone or other physical object upon which computer data can be recorded (hereinafter, "COMPUTER") that is called for by this warrant, or that might contain things otherwise called for by this warrant:

    a. Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, and browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b. Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of

security software designed to detect malicious software;

c.  Evidence of the lack of such malicious software;

d.  Evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

e.  Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

f.  Evidence of the times the COMPUTER was used;

g.  Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

h.  Documentation and manuals that may be necessary to access the COMPUTER or conduct an examination of the COMPUTER;

i.  Contextual information necessary to understand the evidence described in this attachment;

j.  Computer software which may have been used to create, access, modify or to otherwise interact with the stored files. Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. It commonly includes the operating systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs;

k.  Any peripheral equipment used to facilitate the transmission, creation, display, encoding or storage of records, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners.

l.  Records and things evidencing the use of the Internet including:

   a. Routers, modem, and network equipment used to connect computers to the Internet;

   b. Records of Internet Protocol addresses used;

5

     c. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

**Definition: "Records," "Documents," and "Information"**

27. As used above, the terms "records," "documents," and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies).

6

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Gregory Luethans, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a warrant to search the device commonly known as:

   a.      Apple iPhone 12 Max Pro, Serial number G0NDPJZ50D46

The device, further described in Attachment A, will be searched for certain things particularly described in Attachment B.  I am the primary HSI investigator assigned to the criminal investigation of JAMES THEODORE POLZIN (POLZIN).  Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the Application for a Search Warrant, I have not included each and every fact known to me concerning this investigation.  More specifically, I have set forth only the facts I believe are necessary to explain the case and establish the requisite probable cause.

2.      I am a Special Agent with U.S. Immigration and Customs Enforcement ("ICE") Homeland Security Investigations ("HSI") currently serving in the Phoenix Field Office, Financial Crimes Unit.  I have been employed as a federal agent for over 11 years.  I have conducted numerous criminal investigations involving violations of Immigration and Customs law committed against the United States, such as financial crimes, weapons violations, narcotics violations, document and benefit fraud, and human smuggling. Recently, I have been assigned to work with other law enforcement partners to investigate possible fraud associated with the stimulus and economic assistance programs created by the federal government in response to the COVID-19 pandemic.

3.      The information set forth in this Affidavit is based on my personal knowledge and information received from other law enforcement personnel assisting in this investigation, and through financial information, interviews, and other documents and sources.  I have reviewed and am familiar with the information contained in this

1

Affidavit and allege the facts contained herein to be accurate.  Because this Affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant, I have not included each and every fact known to me concerning this investigation.  Rather, I have included the information I believe establishes probable cause to believe the following violations of the United States Code have occurred:

|   |   |   |   |
|---|---|---|---|
| a. | Title 18 U.S.C. § 1343: | Wire Fraud; |
| b. | Title 18 U.S.C. § 1957: | Money Laundering; and |
| c. | Title 26 U.S.C. § 1040: | Fraud in Connection with a Major Disaster. |

## BACKGROUND OF THE INVESTIGATION

4.      In March 2021, IRS:CI joined the Phoenix Division of the Federal Bureau of Investigations (FBI) and Homeland Security Investigations (HSI) in the POLZIN investigation.  Between May 2020 through at least July 2020, within the District of Arizona and elsewhere, Polzin committed fraud in connection with a major disaster or emergency benefits in violation of 18 U.S.C. § 1040.  As a result of the investigation to date, POLZIN was arrested on March 18, 2021 via a Criminal Complaint.

5.      On March 27, 2020, the U.S. President signed a $2.2 trillion stimulus bill called the the Coronavirus Aid, Relief, and Economic Security (CARES) Act, which was intended to ameliorate the economic impact of the COVID-19 Pandemic.  *See* Pub. L. 116-136.  Under the provisions of the CARES Act, $2.2 trillion dollars in economic stimulus was passed by the 116th U.S. Congress and signed into law by the President in March 2020 in response to the economic decline caused by the COVID-19 pandemic in the United States.

6.      The provisions of the CARES Act, in conjunction with an officially declared disaster by the United States Government, allowed for the Small Business Administration (SBA) to offer Economic Injury Disaster Loan (EIDL) funding to business owners negatively affected by the COVID-19 pandemic.  Using the SBA online

portal, EIDL applicants submit personal and business information in support of each EIDL application, and they do not have to submit supporting documentation of any sort.

7.      The application includes a jurat-like paragraph where the applicant affirms that the information submitted is true and correct under the penalty of perjury and applicable criminal statutes.  The application process involves filling out assorted data fields relating to the size of the affected business entity, the ownership of said business, and other information such as the number of employees and gross business revenues realized in the 12 months prior to the COVID-19 impact on the national economy.  This information, submitted by the applicant, is then used by SBA systems to calculate the principal amount of money the small business is eligible to receive in the form of an EIDL.  However, in conjunction with the submission of an EIDL application, by simply clicking on and checking a box within the on-line application, an applicant may request and then receive up to $10,000.00 in an EIDL Cash Advance Grant based on the number of employees claimed.  The EIDL Cash Advance Grant need not be repaid to the SBA if the loan application is ultimately denied by the SBA, or if the applicant declines the EIDL that may be offered by the SBA at a later date.

8.      Pursuant to the provisions governing the EIDL program, loan proceeds must be used by that business on certain permissible expenses.  The EIDL (working capital) loans may be used by the afflicted business, which must have existed in an operational condition on February 1, 2020, to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

9.      Polzin's scheme targeted the EIDL program by providing materially false loan applications claiming non-existent employees and revenues for business entities owned and operated by Polzin.

10.     Polzin submitted supporting loan documents that contained contradicting information for the same business on each application. These representations were false and fraudulent. Polzin made these misrepresentations with the intent to defraud the United States to obtain proceeds from loans to which he was not entitled.

**SUBJECT BUSINESSES**

**Transparen CPAS LLC/Transparen CPAS/Polzin Holdings LLC**

11.    Polzin submitted EDIL loan applications from about May 2020 through July 2020, which bore Polzin's signatures.  Each application sought an EIDL loan for businesses identified as Transparen CPAS LLC, Transparen CPAS, and Polzin Holdings LLC.  Separate loans were filed for Transparen CPAS and Transparen CPAS LLC as the former is Polzin's sole proprietorship and the latter is his LLC.  Each application identified Polzin as owning 100% of the business.  On each application, Polzin listed his residential address as XXXX S. Val Vista Dr. #218, Mesa, AZ.

12.    According to the Arizona Corporation Commission, Transparen CPAS LLC was formed/registered on or about May 22, 2017.  In order to support an EIDL in the amount of $150,000 for application 5556727802 utilizing EIN XX-XX19913, 16. Polzin represented that the business, Transparen CPAS LLC, had revenue of $645,000 and nine employees.

13.    A review of the Department of Economic Security (DES) payroll records for Transparen CPAS LLC (EIN XX-XX19913) showed no quarterly tax and wage reports for the third and fourth quarters of 2019.  The first quarter of 2019 listed two employees, James Polzin and Leonard Pennock, with total wages of $18,450.00.  The second quarter listed three employees: James Polzin, Leonard Pennock, and Roxanne Gates.  Second quarter wages totaled $21,100.00.

14.    In order to support a second EIDL in the amount of $150,000 for application 7800007909 utilizing EIN XX-XX75306, Polzin represented that the business, Transparen CPAS, had revenue of $1,205,401 and 16 employees.  In addition, Polzin provided the SBA with an IRS Schedule C (Form 1040 or 1040-SR) which represented Transparen CPAS had wages of $864,000.00.

15.    A review of DES payroll records for Polzin's SSN (XXX-X7-5306), which was used as his EIN for Transparen CPAS, showed no additional wages.  Further, a review of DES payroll records for Polzin Holdings LLC (EIN XX-XX90157) revealed no

records/wages.

16.     On or about June 18, 2020, Polzin was approved for an EIDL in the amount of $150,000. On the loan application, Polzin stated that Transparen CPAS, a Sole Proprietorship, utilized EIN XX-XX75306. Polzin's Social Security Number (SSN) is XXX-XX-5306.

17.     In addition, Polzin stated that Transparen CPAS had 16 employees and revenues of $1,205,401 for the 12 months prior to January 2020.

18.     A query of Polzin'z SSN through the Arizona Department of Economic Security database yielded negative results, indicating that Transparen CPAS utilizing EIN XX-XX:75306 does not have 16 employees as indicated on its EIDL application.

19.     According to the Arizona Corporation Commission, Polzin Holdings LLC was formed/registered on or about March 14, 2019.  In order to support an EIDL in the amount of $150,000 for application 9193768002 utilizing EIN XX-XX90157, Polzin represented that the business, Polzin Holdings LLC, had revenue of $554,650 and eight employees.

20.     A review of DES payroll records for Polzin's SSN (XXX-X7-5306), which was used as his EIN for Transparen CPAS, showed no additional wages.  Further, a review of DES payroll records for Polzin Holdings LLC (EIN XX-XX90157) revealed no records/wages.

21.     A physical site check of the business address listed for Transparen CPAS and Polzin Holdings LLC, both located at 1 North Macdonald Suite B8, Mesa, AZ 85204, showed a business matching the name Transparen CPAS on the building directory.

**PURCHASE OF 902 N. CORONADO DRIVE, GILBERT, ARIZONA**

22.     On or about June 23, 2020, Polzin purchased the residence located at 902 N. Coronado Dr., Gilbert, AZ.  Polzin opened a BMO Harris Business Advantage Checking Account ending in x1088 on December 17, 2019, in the name of Transparen CPAS LLC.  Also, on December 17, 2019, Polzin opened a BMO Harris Smart

Advantage Account ending in x7848 in the name of JAMES POLZIN and his wife, Svitlana Popsii (Popsii).

23.     Polzin purchased the defendant property via a $5,000.00 wire from a Bank of America account in the name of James Theodore Polzin and a $388,198.34 wire to Magnus title from his personal BMO Harris bank account ending in x7848 on or about June 23, 2020.  The source of the funds was comprised of the following funds:

| Date | Source | Amount |
|------|--------|--------|
| 6/10/2020 | SBA Loan #1512837909 fbo FOUR CORNERS TAX | $218,962 |
| 6/18/2020 | TRANSPAREN BMO x1088 | $300,000 |
| 6/18/2020 | Unknown | $1,200 |
| Total | | $520,152 |

24.     Prior to the June 10, 2020 deposit, Polzin's BMO Harris account (x7848) showed a balance of $6,692.06.

25.     The source of the funds received from Polzin's Transparen BMO bank account (x1088) were comprised of the following funds:

| Date | Source | Amount |
|------|--------|--------|
| 04/27/2020 | SBA Loan | $180,095.00 |
| 04/30/2020 | Interest Paid | $0.99 |
| 04/30/2020 | Unknown Capital One Acct | $0.26 |
| 04/30/2020 | Unknown Capital One Acct | $0.11 |
| 05/04/2020 | SBA Loan #7069947 to Transparn | $180,095.00 |
| 05/04/2020 | Unknown Stripe Acct | $226.57 |
| 05/04/2020 | Unknown Bank of America Acct | $0.46 |
| 05/04/2020 | Unknown Bank of America Acct | $0.30 |
| 05/04/2020 | Square | $0.01 |
| 05/05/2020 | Unknown Deposit | $30,000.00 |
| 05/05/2020 | Unknown Stripe Acct | $247.20 |
| 05/06/2020 | Unknown Stripe Acct | $906.60 |
| 05/07/2020 | Lam Building Design LLC Memo:  PPP Loan | $16,475.00 |
| 05/12/2020 | Unknown Stripe Acct | $102.82 |
| 05/13/2020 | Unknown Stripe Acct | $82.20 |
| 05/19/2020 | Unknown Stripe Acct | $119.32 |
| 05/20/2020 | Unknown Stripe Acct | $452.85 |

| 05/22/2020 | Unknown Stripe Acct | $494.70 |
| 05/28/2020 | Unknown Stripe Acct | $20.32 |
| 05/29/2020 | Interest Paid | $10.59 |
| 06/01/2020 | Unknown Stripe Acct | $40.95 |
| 06/02/2020 | SBA Loan | $149,900.00 |
| 06/04/2020 | EMG Homes | $20,251.20 |
| 06/10/2020 | Unknown Deposit | $40,799.00 |
| 06/11/2020 | Unknown Stripe Acct | $824.10 |
| 06/12/2020 | SBA Loan | $9,000.00 |
| 06/16/2020 | Unknown Deposit | $20,627.50 |
| 06/17/2020 | Unknown Stripe Acct | $1,195.95 |
| 06/18/2020 | SBA Lona #7511667 to Polzin Holdings | $221,867.00 |
| 06/18/2020 | Unknown Stripe Acct | $40.95 |
| Total Deposits into TRANSPAREN BMO x1088 for the Period 04/27/2020 – 06/18/2020 | | $873,876.95 |

26.     Prior to the above these deposits, Polzin's Transparen BMO account (x1088) had a balance of $80.00.

27.     The SBA loan applications signed by Polzin specifically require that the EIDL funds be used for working capital to alleviate economic injury caused by disaster occurring in the months of January 31, 2020 and continuing thereafter and not for the purchase of a private residence or vacation home.   Polzin purchased the defendant property with the proceeds of his EIDL fraud as described above.

**ARREST OF POLZIN**

28.     POLZIN was arrested March 18, 2021 via Criminal Complaint.   Upon being placed into custody by the arresting agents, a search, incident to arrest was conducted upon POLZIN's person.   The following items were found in the pockets of POLZIN's jeans:

a.      an iPhone 12 Max Pro, Serial number G0NDPJZ50D46, that had been in the rear-left pocket of POLZIN'S jeans (the iPhone);

b.      car keys from another pocket of POLZIN'S jeans (BMW keychain); and

       c.     what appeared to be an Apple watch that had been on POLZIN'S wrist.

29.     The arresting agents utilized a digital audio recorder to record Agent Lopez as he read from IRS Document 5661-A, *In-Custody Statement of Rights*, in addition to, Agent Richard Robinson as he read IRS Form *Voluntary Consent to Image and Search Electronic Media* (Voluntary Consent) and throughout the continuation of the enforcement operation.

30.     As Agent Lopez concluded reading IRS Document 5661-A, *In-Custody Statement of Rights*, he then asked if POLZIN would like to provide details or talk about anything. POLZIN shook his head in a "no" fashion and Agent Lopez verified that POLZIN did not want to talk. Agent Lopez asked POLZIN if he would consent to the government's search of his iPhone that was obtained during the search of his pockets. POLZIN agreed to the consent of his phone and Agent Robinson read IRS Form, *Voluntary Consent to Image and Search Electronic Media* (Voluntary Consent) to POLZIN. POLZIN agreed to the consent after being read the IRS Voluntary Consent Form and provided the passcode for the phone as "123654". The IRS Voluntary Consent Form was signed by Agents Robinson and Lopez. Agent Robinson took custody of the iPhone.

31.     Agent Robinson used computer forensics tools to take a collection of data called an "advanced logical extraction" from the iPhone on March 18, 2021 and a collection of data called a "full file system extraction" on March 19, 2021. Both of these data collection methods preserve data extracted from the device on the dates that the collections were taken.

**COMPUTER EVIDENCE AND PROBABLE CAUSE TO BELIEVE COMPUTER EVIDENCE EXISTS AT THE LOCATION TO BE SEARCHED**

32.     Based on the information provided in this Affidavit, and for the following reasons, it is believed that computer-related information is located in the data collections taken from:

        a.     POLZIN's iPhone 12 Max Pro:

               o   Serial Number G0NDPJZ50D46

In regard to computer evidence extracted from the iPhone, bank records indicate POLZIN conducts significant online activity to include electronic payments and ACH style debits from his business and personal accounts.  There have been electronic deposits into POLZIN's accounts to include the alleged fraudulent loans obtained from SBA and from Stripe (a predominantly online financial institution).  In addition, bank statements reflect internet banking transfers and online scheduled transfers between POLZIN's personal accounts at multiple financial institutions.  Bank records from Wells Fargo, Scottrade, US Bank, Capital One, BMO Harris and USAA indicate phone number 602-565-6061 is one of POLZIN's phone numbers.

33.     Furthermore, in records obtained from Magnus Agency for the above mentioned 902 N. Coronado property, POLZIN's used his email, polzinted@gmail.com to correspond with real estate agents and Magnus Title Agency.  In addition, POLZIN utilized *Docusign* to make his signature electronically on the Arizona Association of Realtors forms for the purchase agreement with the seller of Coronado and some of the Magnus Title Records.  Popsii also provided her signature via *Docusign* on some of the Magnus records as well.

34.     Records obtained from the SBA indicate phone number 602-565-6061 was used as a contact phone number for borrowers TRANSPAREN CPAS (loan #8166017), JAMES POLZIN (loan #2241937), JAMES POLZIN (loan #4175457), and FOUR CORNERS TAX AND ACCOUNTING LLC (loan #1512837).

35.     Records were obtained from Luxury Auto Collection (LAC) for POLZIN's purchase and resale of a 2017 Porsche 911 VIN:  WP0CD2A98HS178457.  POLZIN purchased this vehicle on or about June 19, 2020 for a total sales price of $159,461.64 with Bank of America Cashier's Check #1138714315.   The LAC records indicate POLZIN provided phone number 602-565-6061 as his contact number for home and work.  It should be noted that the Porsche was purchased 11 days after POLZIN's wired funds to open escrow for the Coronado purchase.   POLZIN would later use some of the SBA loan proceeds he obtained to transfer $388,198.34 on June 23, 2020 to Magnus Title Agency to complete the purchase.

36.     Additional LAC records indicate POLZIN resold the Porsche back to LAC for $126,000 on March 17, 2021 via LAC check #25806.  The LAC Wholesale Vehicle Security Agreement, dated March 15, 2021, indicate POLZIN's phone number the same as provided nearly one year earlier, as 602-565-6061.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

37.     As described above and in Attachment B, this application seeks permission to search for records that might be found in the data extracted from POLZIN's iPhone 12 Max Pro in whatever form they are found.  One form in which the records might be found is data stored on the phone's hard drive or other storage media.  A storage medium is any physical object upon which computer data can be recorded.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

38.     *Probable cause.*  I submit that there is probable cause to believe those records will be found in the data extracted from POLZIN's iPhone 12 Max Pro by IRS:CI for at least the following reasons:

a.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium,

10

deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

39.  *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that

establishes how computers were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence will be in the data extracted from POLZIN's iPhone 12 Max Pro because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

    b.    Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, and correspondence (and the data associated with the foregoing, such as file creation and last accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

   c.     A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

   d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e.     Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

## CONCLUSION

40.    Based on the facts and circumstances stated above, I assert that there is probable cause to believe that POLZIN knowingly devised a scheme to commit wire fraud in violation of Title 18 United States Code § 1343, committed money laundering in violation of Title 18 United States Code § 1957, and has committed fraud in connection with a major disaster in violation of Title 26 U.S.C. § 1040. I respectfully submit that

there is probable cause to believe records now located at the aforementioned location are evidence and fruits and instrumentalities of criminal offenses against the United States.

Executed on: _May 12, 2021_

**GREGORY N LUETHANS**  Digitally signed by GREGORY N LUETHANS
Date: 2021.05.12 12:50:18 -07'00'

Gregory Luethans, Special Agent
U.S. Immigration and Customs Enforcement
Homeland Security Investigations

___X___   Sworn by telephone

Sworn to and subscribed before me telephonically on this __12__ day of May, 2021.

HONORABLE MICHELLE H. BURNS
UNITED STATES MAGISTRATE JUDGE